OPINION
{¶ 1} Carol Ann Reynolds, plaintiff-appellant, appeals a decision of the Franklin County Court of Common Pleas. The State Teachers Retirement System of Ohio ("STRS") and the State Teachers Retirement Board ("board"), defendants-appellees, have also filed a cross-appeal.
{¶ 2} On January 10, 2000, appellant filed a complaint in the trial court against STRS and the board. Appellant alleged in her complaint that she had been employed as a teacher with the Painesville City School District between 1974 and 1992. During her employment period, appellant and the school district made contributions to STRS. In June 1992, appellant and her husband, Robert Scullion, moved to Michigan. Because of the move, appellant took a leave of absence from the school district. Appellant alleged that, on or about April 19, 1993, Scullion completed an application with the board seeking a refund of all of appellant's contributions deposited with STRS. The board sent a check by ordinary U.S. mail in the amount of $32,143.52 to appellant and Scullion's home address. Appellant claimed Scullion received the check, forged her signature, negotiated the check, and converted the proceeds of the check for his sole exclusive use, enjoyment, and benefit. Appellant and Scullion separated in 1997, and were divorced the following year.
{¶ 3} Appellant claimed in her complaint that appellees asserted appellant's account with STRS was closed, and, therefore, she was not entitled to the rights or benefits as a member of STRS. Appellant stated that she was entitled to the rights and benefits from STRS because she never withdrew her deposits. Appellant contended that appellees:
{¶ 4} "* * * [F]ailed to assure that [appellant] was aware of the request for a full refund of her contributions, failed to take adequate measures to assure that the Application had been prepared and submitted by [appellant], failed to assure that the Application had been signed by [appellant], failed to require notarization, witnesses or other reasonable verification of the signature on the Application, failed to assure that the refund check would be received and negotiated by Reynolds, and otherwise failed to exercise the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in like capacity and familiar with these matters would use, thereby breaching their duties and obligations to [appellant] under common law and as described in Chapter 3307 of the Ohio Revised Code."
{¶ 5} Appellant requested a judgment in her favor against appellees for compensatory damages and a declaratory judgment setting forth her rights and status under R.C. Chapter 3307.
{¶ 6} On April 11, 2001, the trial court partially granted a motion by appellees for judgment on the pleadings. The court found that appellant could not maintain a breach of contract action against STRS since the only rights she had were those provided by statute. The court also held that appellant could not maintain a breach of fiduciary duty action under the common law because STRS only owes appellant the fiduciary duties provided in the statute. The court then held that a declaratory action pursuant to R.C. 2721.03 is a proper vehicle for judicial review because the resolution of the case would be based upon an interpretation of R.C. 3307.33.
{¶ 7} Although the trial court concluded that appellant was not entitled to a trial by jury, the court empanelled an advisory jury, pursuant to Civ.R. 39(C), to assist the court with findings of fact. A trial was held in June 2001, concerning the factual issues involved in the case. After hearing evidence presented by the parties concerning appellant's role in the withdrawal of her STRS contributions, through interrogatories, the jury concluded:
{¶ 8} "1) [Appellant] did not apply to withdraw her STRS funds;
{¶ 9} "2) [Appellant] did not actually receive payment of her STRS funds;
{¶ 10} "3) [Appellant] did not constructively receive payment of her STRS funds;
{¶ 11} "4) [Appellant's] STRS funds were deposited in the joint account maintained by [appellant] and Scullion;
{¶ 12} "5) STRS funds were used to purchase a home for [appellant] and Scullion;
{¶ 13} "6) [Appellant] received the benefit of $20,000.00 of the STRS funds;
{¶ 14} "7) [Appellant] did not have actual possession of the STRS funds; and
{¶ 15} "8) [Appellant] did not have constructive possession of the STRS funds."
{¶ 16} The trial court adopted the factual conclusions by the jury and determined the remaining questions of law in a decision dated July 25, 2001. In the decision, the court found "by a preponderance of the evidence that [appellant] did not have that knowledge, [and] the court finds that [appellant] neither actually nor constructively received the STRS funds from her account." The court found that the value of appellant's retirement account far exceeded the payout released on the forged application, stating that the evidence showed the value of her retirement account exceeded $1 million. The court held that it "would be unjust to require STRS to reinstate [appellant's] membership without requiring [appellant] to return those withdrawn funds." The court thereafter declared the parties' rights as follows:
{¶ 17} "1. [Appellant] is entitled to reinstatement of her membership in STRS with full benefits as though the membership had never been withdrawn.
{¶ 18} "2. Reinstatement shall be effective upon [appellant's] payment to STRS of $26,812.00, the sum of money actually removed from her STRS account.
{¶ 19} "3. Immediately upon receipt of the sum of $26,812.00 from [appellant], State Teachers Retirement System shall take all steps necessary to fully restore [appellant] to membership in the STRS retirement system.
{¶ 20} "4. [Appellant] is not entitled to an award of attorney fees.
{¶ 21} "5. [Appellees] shall pay the costs of these proceedings."
{¶ 22} In its final judgment dated October 12, 2001, the trial court modified its findings to state that the correct sum to be repaid as a prerequisite to reinstatement was $32,143.52. Appellant appeals the decision of the trial court and presents the following assignment of error:
{¶ 23} "THE TRIAL COURT ERRED BY FAILING TO DECLARE THAT PLAINTIFF-APPELLANT IS PRESENTLY A MEMBER OF DEFENDANT-APPELLEE THE STATE TEACHERS RETIREMENT SYSTEM OF OHIO, ENTITLED TO THE CONTRIBUTIONS ACCUMULATED DURING HER SERVICE AS A PUBLIC SCHOOL TEACHER IN THE STATE OF OHIO AND ALL OF THE OTHER RIGHTS AND BENEFITS ATTENDING SUCH MEMBERSHIP, AND BY DECLARING THAT PLAINTIFF-APPELLANT MUST PAY TO SAID DEFENDANT-APPELLEE THE SUM OF $32,143.52, PLUS INTEREST THEREON, AS A PREREQUISITE TO A REINSTATEMENT OF PLAINTIFF-APPELLEE'S MEMBERSHIP IN SAID DEFENDANT-APPELLEE."
{¶ 24} Appellees also appeal the trial court's decision and have filed three cross-assignments of error:
{¶ 25} "[I.] THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT DID NOT HAVE CONSTRUCTIVE KNOWLEDGE OF THE WITHDRAWAL OF HER ACCUMULATED CONTRIBUTION FROM STRS.
{¶ 26} "[II.] THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT DID NOT HAVE CONSTRUCTIVE RECEIPT AND/OR POSSESSION OF HER ACCUMULATED CONTRIBUTIONS WHEN THE EVIDENCE SHOWED THE STRS REFUND WENT INTO HER OWN BANK ACCOUNT AND WAS USED TO PURCHASE A HOME.
{¶ 27} "[III.] THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN FINDING THAT APPELLANT WAS ELIGIBLE FOR REINSTATEMENT AS AN STRS MEMBER."
{¶ 28} Appellant argues in her assignment of error the trial court erred by failing to declare that she is presently a member of STRS. Appellant claims the trial court incorrectly concluded that she should pay $32,143.52 plus interest to STRS before she could have STRS membership benefits because the money was originally taken from her account by fraud.
{¶ 29} Former R.C. 3307.28 states in part:[1]
{¶ 30} "The membership of any person in the state teachers retirement system shall cease if he withdraws his accumulated contributions; or if he retires as provided in section 3307.38 or 3307.39
of the Revised Code; or if he dies; or if the state teachers retirement board denies him membership pursuant to section 3307.27 of the Revised Code."
{¶ 31} Therefore, appellant's membership in STRS would have ceased if: (1) appellant withdrew her accumulated contributions; (2) appellant retired; (3) appellant died; or (4) the board denied appellant membership pursuant to R.C. 3307.27.
{¶ 32} The record shows appellant did not retire from her position as a teacher with the Painesville City School District in April 1993. Appellant testified that she originally planned on resigning from her teaching position but was convinced by Fritz Overs, Superintendent of the Painesville City School District to take a leave of absence for one year. Appellant testified that Overs told her she could "[t]ake a leave of absence for one year, and if you are still happy in Michigan and everything's going okay, you can renew it and take another leave of absence." There is no question among the parties about appellant's mortal status. Former R.C. 3307.27 states that the board may at any time deny "the right to membership to any teacher whose compensation, though disbursed by an employer, is reimbursed to the employer, in whole or in part, from other than public funds." Appellees do not allege that appellant's membership with STRS was canceled pursuant to former R.C.3307.27.
{¶ 33} One of the main issues argued during trial was whether appellant withdrew her accumulated contributions. Appellees argued that appellant knew about the withdrawal of her contributions from her STRS account and received a benefit from the withdrawal. Appellant argued that she did not know about the withdrawal. Concerning this question of fact, the jury and the trial court believed appellant, finding that appellant did not apply to withdraw her STRS funds, did not receive payment of her STRS funds, did not constructively receive payment of her STRS funds, did not have actual possession of the STRS funds, and did not have constructive possession of the STRS funds. While we may have reached a different conclusion, we will not usurp the province of the advisory jury and the trial court to make factual findings based upon their first-hand view of the evidence. A review of the record supports these findings.
{¶ 34} Appellant testified that Scullion was home during the day because he worked from home and received all mail addressed to her. Appellant also testified that Scullion was responsible for all of the family finances. Even though the STRS reimbursement check was addressed to appellant and sent to her home address, appellant believed Scullion received the check without her knowledge. She further stated that she had no reason to question him regarding their finances until they separated in March 1997.
{¶ 35} Appellant stated that she first became aware of her funds being withdrawn from her STRS account when she tried to borrow money from her STRS account in order to pay for a separate residence. Appellant stated that, when she called STRS about her account, she was told the money was gone. Appellant further stated that, when she called Scullion to ask him whether he knew anything about where her money had gone, Scullion told her "I'm sorry. I'll pay you back."
{¶ 36} The application for a refund of member deposits used to withdraw appellant's STRS funds was presented as evidence. Appellant testified that she did not fill out the application and that the signature on the application claiming to be her signature was not her signature. Robert D. Kullman, a forensic document analyst, testified concerning the handwriting on the application. Kullman stated that, after he did a side-by-side comparison with known writings of appellant, he found "many significant differences within the handwriting habits that occurred, extensive evidence to the fact that those were not her signatures." He also testified that the endorsement on the back of the refund check in the amount of $32,143.52 was "an attempt by someone to represent that as her signature." He further testified that the signature appearing below appellant's purported signature on the check was Scullion's signature. He concluded that, after comparing Scullion's handwriting with the handwriting on the application for a refund of member deposits, "the known printing that I examined of * * * Scullion were written by one and the same person."
{¶ 37} Accordingly, we find that the record supports the finding that appellant did not withdraw her accumulated contributions, did not cause her accumulated contributions to be withdrawn, and did not know about her contributions being withdrawn prior to March 1997.
{¶ 38} The trial court further concluded, however, that, because appellant benefited from the withdrawal of her funds from STRS, it would be unjust to allow her to also benefit from STRS membership without requiring appellant to pay STRS $32,143.52, the amount of the refund check. The trial court therefore conditioned appellant's restoration of her membership in STRS on appellant repaying STRS $32,143.52, plus interest. We agree with this approach.
{¶ 39} The record demonstrates that Scullion deposited the $32,143.52 into a bank account held jointly by appellant and Scullion with Comerica Bank. A financial summary of the account shows that, on May 4, 1993, $32,143.52 was deposited into the joint account. The balance on the account at that time was $562.87. From the time appellant's STRS funds were deposited until September 30, 1993, no other deposits were made to the account. The account earned $246.50 in interest during this period. Ten withdrawals were made on the account in the amounts of $500, $2,206.39, $643.48, $1,000, $2,000, $4,200, $15,000, $1,000, and $5,000 for a total of $31,549.87, leaving a balance of $403.02 on September 30, 1993. A land contract signed on September 1, 1993 by appellant and Scullion was introduced as evidence. The contract stated that $15,000 had been paid toward the purchase of the property, and that an additional principal payment of $5,000 shall be paid on October 1, 1993. The $15,000 withdrawal from the joint account was made on August 27, 1993, and the $5,000 withdrawal was made on September 16, 1993. Appellant testified that they lived in the home for about one year.
{¶ 40} We find that the trial court was correct in determining that appellant would have a windfall if she were allowed to have full benefits from STRS without repaying the funds from which she benefited. In reaching this conclusion, we note that appellant may have civil remedies based upon her allegations that Scullion forged and negotiated the $32,143.52 check, which was payable to appellant. We also note that, as part of the judgment in appellant's divorce from Scullion, a court in Michigan has ordered Scullion to pay $16,071.76 to appellant as his one-half share of the STRS pension benefit. Because we conclude that appellant is entitled to STRS membership after she repays $32,143.52 to STRS, appellant's assignment of error is overruled.
{¶ 41} Appellees argue in their first cross-assignment of error the trial court abused its discretion and erred as a matter of law when it found appellant did not have constructive knowledge of the withdrawal of her STRS contributions. Appellees contend the "manifest weight of the evidence supports STRS' contention that Appellant had, at the very least, constructive knowledge of the withdrawal of her STRS accumulated contributions." Appellees further contend that, if appellant had used reasonable care and diligence, she "could have and should have known of her STRS withdrawal."
{¶ 42} By their second cross-assignment of error, appellees argue that the trial court abused its discretion when it did not find that appellant had constructive receipt and/or possession of her accumulated contributions based upon the funds being deposited into the joint account.
{¶ 43} A reviewing court is guided by the presumption that the findings of a trial court are correct, as the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use the observations in weighing the credibility of the proffered testimony. Fernandez v. Anheuser-Busch, Inc., Franklin App. No. 01AP-1279, 2002-Ohio-3355, at ¶ 29, following Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. As we have already noted, while we may have reached a different conclusion, the record supports the findings by the advisory jury and the trial court that appellant did not have constructive knowledge of the withdrawal or receipt of her STRS contributions. Accordingly, appellees' first and second cross-assignments of error are overruled.
{¶ 44} Appellees argue in their third cross-assignment of error the trial court abused its discretion and erred as a matter of law when it found that appellant was eligible for reinstatement as an STRS member. However, as we have already articulated in our discussion regarding appellant's assignment of error, the record supports the finding that appellant's membership in STRS should not have been terminated pursuant to the requirements found in former R.C. 3307.28, and that, upon repayment of the benefit she received, appellant is entitled to reinstatement. Appellees' third cross-assignment of error is overruled.
{¶ 45} Accordingly, appellant's single assignment of error is overruled, and appellees' three cross-assignments of error are overruled. The judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
LAZARUS, J., concurs.
BROWN, J., dissents in part.
[1] Effective July 13, 2000, former R.C. 3307.28 was renumbered as R.C. 3307.71 and 3307.33. The quoted portion of former R.C. 3307.28 was effective at the time appellant's membership was terminated with STRS in April 1993, and exists in the present R.C. 3307.33.